# Bradford *v.* Mayor & City Council of Anniston.

*Action against Municipal Corporation, for Damages caused by Defect in Street.*

1. *Liability of municipal corporation for injuries caused by defects in streets.*—An action lies against a municipal corporation, in favor of the owner ·of a domestic animal which, while driven along a public street, received fatal injuries by stepping into a hole, when the evi-

[Bradford v. Mayor & City Council of Anniston.]

dence shows that the accident happened about one o'clock in the afternoon, and that the street overseer saw the hole about nine o'clock in the morning, but had not erected any warning signal at the spot; and the fact that the street hands were at work all day repairing other defects or damages to the streets, caused by a rain during the previous night, is no defense to the action, when it is not shown that the corporation had exhausted all the other resources and means in its power for keeping the streets in repair.

APPEAL from the City Court of Anniston.
Tried before the Hon. B. F. CASSADY.

This was an action, brought by the appellant against the appellee, a municipal corporation, and sought to recover damages for an injury to his ox, which resulted in the death of the ox; and which injury was caused by the alleged negligence of the city in not keeping its street in proper repair. The case was submitted to the court for decision, without the intervention of a jury. All the other facts necessary for a full understanding of the decision of this court are set out in the opinion. The only exception to the ruling of the lower court on the evidence, was taken to the court's admitting in evidence the testimony of one Spencer, a civil engineer, whose testimony tended to show that the bridge, as repaired by the street force, was properly constructed. The plaintiff appeals from the judgment of the court, which was rendered in favor of the defendant, and assigns that judgment, and the ruling on the evidence, as error.

T. C. & S. S. SENSABAUGH, and JAS. H. SAVAGE, for appellant, cited *Mayor, &c., v. Wilson*, 14 Amer. St. Rep. 150; *Whitfield v. City of Meridian*, 14 Amer. St. Rep. 596, and note.

AGEE & MICOU, *contra.*—1. There is a fatal variance between the allegations and proof, in that the complaint alleges that Wilson Bradford, the plaintiff, was driving his oxen at the time of the accident, while the evidence shows that the oxen were being driven by Wallace Bradford, plaintiff's son.—*Mayor, &c., v. Wilson*, 14 Amer. St. Rep. 150; 1 Greenl. on Ev. §§ 60, 64; 1 Chitty on Pleading, § 392. 2. There was no error in the court's ruling upon the evidence.—*Eureka Co. v. Bass*, 81 Ala. 215; *Shook v. Pate*, 50 Ala. 91; *Wood v. Brewer*, 57 Ala. 515; *Tullis v. Kidd*, 12 Ala. 648. 3. The court properly rendered judgment for defendant.—*Hubbard v. Concord*, 35 N. H. 54; *Springfield v. LeClaire*, 49 Ill. 476; 2 Dillon on Mun. Corp., § 1025.

COLEMAN, J.—In the location and erection of bridges, regard should be had to the size and nature of the stream, the

character and feature of the adjacent grounds, the relative position and formation of the abutting land, its liability to overflow, and their probable extent and duration.—86 Ala. 451. This is the rule laid down as applicable to railroads, and the same rule is applicable to cities, so far as it requires of them in the construction of bridges across their streets to provide against such causalities as a cautious and prudent man should foresee and anticipate.

The evidence shows, the branch ran diagonally across the street, from a north-eastern in a south-western direction. The banks on the eastern and northern sides were high and not subject to overflow, while the western and southern bank of the stream was low, and subject to overflow. The lower side was raised by filling in with earth. The sleepers of the bridge rested on the high embankment on the eastern side, and on top of posts placed upright in the channel on the western and lower side, and then ran out on the raised embankment, which constituted the abutment to the bridge.

During an overflow, the current necessarily came with great force against the earth forming the embankment on the lower side, and unless in some way protected, it could not be said that the abutment was constructed with reasonable skill and prudence. After the injury had occurred, it was shown that by the use of boxing and other appliances, the embankment and abutment on the lower side made by earth was properly protected against the current of an overflow. The evidence was in conflict as to whether this boxing had been so placed and constructed before the injury, and whether it was a part of the bridge when the damage occurred. Looking at all the evidence, we can not say the conclusion of the court on this question was erroneous.

The evidence, however, shows that the injury was caused by a hole about one foot in diameter in or near the abutment. This hole was in one of the main thoroughfares of the city, over which people from the suburbs and country daily traveled with wagons and vehicles. It was admitted that the street overseer saw this hole about nine o'clok A. M., and plaintiff's ox fell in this hole about one o'clock P. M. of the same day.

Notice to the street overseer was notice to the city.— *Whitfield v. City of Meridian*, 66 Miss. 570; 14 Amer. St. Rep. 596, and authorities cited in note. Nothing was done to remedy the danger caused by this hole, and no notice, warning or signal posted, or otherwise given, by which the travelling public was made aware of or could learn of the existence of this dangerous hole in one of its main thoroughfares. The

only excuse given for leaving the highway in this dangerous condition, from nine o'clock A. M. until in the afternoon, was that the street force was busy in repairing other damages caused by the rain of the previous night. There is no evidence to show that by the exercise of reasonable diligence, extra force could not have been employed by the city for the emergency, and no excuse whatever pretended to be given why some notice or signal was not put up at this dangerous place to warn the travelling public of its existence.

This was negligence *per se*, making the city liable for injury caused thereby unless the party injured was guilty of contributory negligence.—*City of Montgomery v. Wright*, 72 Ala. 420; 14 Amer. St. Rep. 150; 14 *Ib.* 596; *S. & N. Ala. R. R. Co. v. McLendon*, 63 Ala. 266. The plaintiff's ox was being driven along this usually travelled thoroughfare, without any notice or knowledge of the existence of the hole, on the part of the person having him in charge. There is no evidence tending to show plaintiff was guilty of contributory negligence.

The declaration avers that plaintiff was driving his oxen, while the evidence shows his son was driving. The bill of exceptions fails to state whether the son was driving for his father, or in his own right; whether he was still a minor, or *sui juris*. These questions do not seem to have been raised in the court below, but only the negligence of the defendant seems to have been considered. There was no error in the ruling of the court on the admission of testimony.

Reversed and remanded.

