(80 South. 845)

## MORGAN v. MOBILE & O. R. CO.
### (6 Div. 808.)

(Supreme Court of Alabama. Jan. 16, 1919.)

1. APPEAL AND ERROR ⚖➡843(3) — REVIEW — MATTERS NECESSARY TO DECISION.

Where it appears without dispute that plaintiff was guilty of negligence which concurred with that of defendant to produce the injury, it is unnecessary to decide whether there was any evidence to go to the jury on the question of defendant's negligence.

2. RAILROADS ⚖➡381(5)—DEFECTIVE BRIDGE —CONTRIBUTORY NEGLIGENCE—EFFECT.

Although barriers and red lights intended to warn against use of bridge maintained by defendant railroad under authority of city and was being repaired were insufficient, plaintiff, who, seeing both, attempted to cross the bridge without looking for holes and defects, could not recover.

3. RAILROADS ⚖➡384—DEFECTIVE BRIDGE— PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.

Plaintiff pedestrian, who saw barriers and red lights intended to warn against use of bridge which was maintained by defendant railroad under authority of city and was being repaired, was conclusively charged with knowledge that barriers and lights were placed to warn him not to attempt to cross.

4. RAILROADS ⚖➡381(5)—DEFECTIVE BRIDGE — INJURY TO PEDESTRIAN — ASSUMPTION OF RISK.

The mere fact that plaintiff pedestrian saw others using bridge which was being repaired by defendant railroad did not justify him in disregarding defendant's signals and red lights, and where he did he assumed the risk.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action by Cecil Morgan, pro ami, against the Mobile & Ohio Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

M. T. Ormond and H. A. & D. K. Jones, all of Tuscaloosa, for appellant.

Foster, Verner & Rice, of Tuscaloosa, for appellee.

### Statement.

MAYFIELD, J. Appellee constructed and maintains a wooden bridge along Seventh street in the city of Tuscaloosa where that street crosses its railroad track. The track where it crosses this and other streets in that vicinity is in a deep cut—20 or 30 feet deep where it crosses Seventh street. The bridge thus forms the highway across appellee's track at this point. The bridge, however, is only about 22 feet wide, while the street is about 90 feet wide. At the time of the accident there was no partition which separated the part of the bridge used by pedestrians from that part used by vehicles and other modes of travel along the bridge. The sidewalks did not lead up to the bridge, because the bridge was narrower than the streets, and it being in the middle of the street. Pedestrians, however, had made paths from the sidewalks to the end of the bridge in diagonal lines.

At the time of the injury the bridge was being repaired by appellee, and, not being able to finish the repairs in one day, the workmen doing the work at nightfall placed barriers across the street at the ends of the bridge and suspended a red light from each barrier. The length of these barriers was about the same as the width of the bridge, which, as before stated, formed the whole of the highway which was used in crossing the railroad tracks, which were in a cut 20 to 30 feet below the bridge. The barriers alone would have prevented any one in vehicles from getting on the bridge, but pedestrians could walk around the end of the barriers and go upon the bridge, and could cross, though some of the planks forming the floor of the bridge had been removed, by walking on the sills and sleepers, and on planks which had been laid across the openings in the floor for temporary use only, probably for the workmen to pass from one point to another on the bridge. It appears that some pedestrians did cross the bridge in safety while it was in its then condition.

Appellant, in company with three young ladies, was coming along Seventh street after dark, and on approaching the bridge they observed the barriers and signal lights, and it was suggested by some one in the party that they could not cross the bridge, and would have to go to another street crossing; but about the time of these remarks some other persons were observed coming off the bridge, apparently having crossed it, so appellant and his party of young ladies decided to go on across. He and one young lady went around one end of the barrier, while the other two went around the other end, and all proceeded to attempt to cross. Appellant and one young lady fell into one of the holes in the bridge; appellant falling onto the track some 20 or 30 feet below, receiving a severe shock and suffering serious personal injuries. The young lady, however, caught onto the timbers and did not fall through to the ground below.

Appellant brings this his suit to recover damages for the personal injuries received in consequence of falling through the hole in the bridge.

The complaint contained eight or ten counts. The negligence alleged was in leaving the hole in the floor of the bridge while it was being repaired, and in other counts for failing to properly guard the exposed danger by adequate and sufficient barriers and lights.

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

To each of the counts the defendant pleaded the general issue and contributory negligence.

At the conclusion of the trial on these issues the court gave the affirmative charge for the defendant with the hypothesis which resulted in a verdict and judgment for defendant, from which plaintiff prosecutes this appeal, assigning and arguing as error the giving of the peremptory instruction as before stated.

### Opinion.

We are unable to say after a careful examination of the evidence that there was error in giving the instruction to find for the defendant if the jury believed the evidence.

There is no contention that defendant was guilty of negligence in the way of obstructing the highway in placing the bridge, or in maintaining it except as to leaving the holes in the floor overnight while it was being repaired, or in failing to adequately or sufficiently guard the danger during the night by barriers and lights. The bridge was constructed and maintained under authority from the city of Tuscaloosa.

[1] We deem it unnecessary to decide as to whether or not there was any evidence to go to the jury on the question of defendant's negligence which proximately contributed to the plaintiff's injuries, as alleged.

[2, 3] This is unnecessary for the reason that, if such negligence be conceded, it appears without dispute that plaintiff was guilty of contributory negligence which concurred with that of the defendant to produce the injuries suffered by him. If it be conceded that the barriers or lights were inadequate or insufficient, and the defendant was guilty of actionable negligence in respect thereto, it nevertheless appears without dispute that plaintiff saw both the barriers and lights, and was therefore chargeable with knowledge of the object and purpose of the same. He knew or ought to have known, and in law was conclusively charged with the knowledge, that the barriers or lights were not placed there for the purpose of assisting or aiding him to cross a defective bridge, but were put there to warn him not to attempt to cross on account of the danger. If the lights were sufficient to light up and show the hole into which he fell, it was of course, negligence or inattention in stepping into the hole. On the other hand, if the lights were not sufficient to so light up the bridge as to show the holes, then it was negligence on his part to attempt to cross without the aid of sufficient light.

The lights and barriers, however, as before stated, were not there to invite people onto the bridge and aid them in crossing it, but to warn them off of it, and to prevent them from attempting to cross. If the plaintiff had not been conscious of the barriers, lights, and warnings, and had gone on the bridge without observing them, then there might be a jury question as to whether or not he should have observed the warnings and have heeded them; but, as he himself testifies that he did actually see the barriers and the lights, and is chargeable with knowledge of the object and purpose thereof, the sufficiency or inadequacy of the warning is immaterial.

If the barriers and lights in this case had been erected merely for the purpose of warning pedestrians of danger, and inviting them to cross, but to do so with care and prudence, then the question of plaintiff's contributory negligence might have been one for the jury under all the circumstances, as was held in the cases of Birmingham v. Tayloe, 105 Ala. 177, 16 South. 576; City of Montgomery v. Wright, 72 Ala. 411, 47 Am. Rep. 422; Bradford v. Anniston, 92 Ala. 349, 8 South. 683, 25 Am. St. Rep. 60; Birmingham v. Starr, 112 Ala. 98, 20 South. 424; Montgomery v. Smith, 146 Ala. 316, 39 South. 757; Mobile v. Shaw, 149 Ala. 599, 43 South. 94.

The above were actions against municipal corporations as for injuries on account of defective highways; but the same rule is applicable here as the duty to maintain in this case is by contract and law imposed on the defendant.

This case is distinguishable from that of Black v. Vandiver, 155 Ala. 321, 46 South. 524, in that there was such conflict in the evidence as to make plaintiff's negligence one for the jury.

Here, the plaintiff himself testified that he knew of the barriers, knew of the danger signals, red lights, saw both; that he did not look for holes or defects in the bridge, but merely "walked along in the average gait." Here his own evidence shows that, notwithstanding the warning of danger, he exercised no care to ascertain the particular defect or to avoid it.

It is also distinguishable from the case of Kearns v. Mobile, etc., R. R. Co., 196 Ala. 99, 71 South. 993, in that there the plea held bad was open to the construction that the signals of danger were intended merely as cautionary measures to those who desired to use the highway at that point, and not as warnings not to use the whole or any part of the street at the point in question.

Here the barriers and lights together were intended to warn against the use of the bridge or any part of it, and not merely a careful or cautious use thereof, and the plaintiff so understood the warning and the use.

[4] The mere fact that others were willing to use it in its then condition, and did so use it, did not justify him in disregarding the defendant's warning and use it, unless he did as the undisputed evidence shows he did—assume the risk himself. Having so assumed the risk, and disregarded the defendant's warning, he must bear the loss he suffered in consequence of his own negligent act in failing to heed a known warning, and

to exercise reasonable care when he was conscious of some defect or danger. What was said by this court, speaking through Sharpe, J., in Tuscaloosa Waterworks Co. v. Herren, 131 Ala. 84, 31 South. 444, mutatis mutandis, may be said of this on the question of contributory negligence. It is there said:

"Plaintiff was thus left to tell his own story, and has done so with apparent honesty, but the case he makes does not warrant his recovery.

"If it be assumed that defendant was negligent in having the timber on the stair, yet the doctrine of contributory negligence works the plaintiff's defeat. The law classes as negligent, not only conscious imprudence, but also forgetfulness of and inattention to dangers which are both known and understood. L. & N. R. R. Co. v. Hall, 87 Ala. 708 [6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84]; Wilson v. L. & N. R. R. Co., 85 Ala. 269 [4 South. 701]; L. & N. R. R. Co. v. Banks, 104 Ala. 508 [16 South. 547]. * * *

"Where the facts bearing on negligence are undisputed and are not susceptible of adverse inferences, the question of negligence vel non, whether relating to conduct of the plaintiff or defendant, is properly one for the court. C. & W. R. Co. v. Bradford, 86 Ala. 574 [6 South. 90]."

It results that the judgment of the lower court will be here affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.