45 So.2d 306
**RAILWAY EXPRESS CO. et al. v. REAL.**
6 Div. 844.

Supreme Court of Alabama.
March 30, 1950.

490

S. M. Bronaugh, E. Grant Fitts and White, Bradley, Arant & All, of Birmingham, for appellants.

Taylor, Higgins, Koenig & Windham and J. Howard Perdue, Jr., of Birmingham, for appellee.

LIVINGSTON, Justice.

The one count in the complaint submitted to the jury alleged in substance that on September 5, 1947, while plaintiff was engaged in his duties as railway postal clerk, an employee of the United States mail service, in and about a Frisco storage car at the railroad terminal station in the City of Birmingham, Jefferson County, Alabama, the defendants caused or allowed an express truck to run against plaintiff's right hand causing plaintiff to sustain an injury to his right index finger necessitating the amputation of the said right index finger at or near the second joint, and that his said injuries and damages were caused as a proximate result of the negligence of the defendants in and about the operation of said express truck at said time and place.

After demurrers were interposed and overruled, defendants entered a plea of the general issue in short by consent with leave, etc. The jury returned a verdict for the plaintiff in the sum of $4500.00.

The principal argument for reversal is the refusal of the general charge for defendants, the denial of defendants' motion for a new trial and several refused charges which we will discuss.

Plaintiff's evidence tended to prove that on September 5, 1947, the plaintiff, who was employed as a transfer clerk by the United States mail service, had been checking mail in a railroad storage car on a Frisco train, car No. 333, at the terminal station in Birmingham, Alabama. The train in which he was working was headed north along side platform 4, which was on the west side of the train: the plaintiff had finished checking mail and had gone to the door of the mail car preparatory to leaving the car. The door to the mail train was about eighteen feet from the north end of the car. A grab iron, a vertical iron bar extending from about six inches above the floor level of the car upward some thirty inches, was located on the north edge of the door as an aid in boarding and leaving the mail car. When plaintiff reached the mail car door he caught hold of the grab iron and, as he did so, he observed defendant Patterson moving south on the platform pulling a loaded express truck and about fifteen feet away from the door where plaintiff was standing, with the express truck some twenty inches away from the side of the mail car. Plaintiff instead of getting down ahead of Patterson and the express truck elected to wait until the express truck had passed, but did not remove his hand from the grab iron. In this position plaintiff turned his head momentarily to see if the door on the other side of the mail car was closed, and during this interval, while his head was turned, the express truck struck the grab iron and plaintiff's right index

finger virtually amputated near the second joint. The platform along which the express truck was being pulled was about fifty-one inches below the level of the mail car floor where plaintiff was standing at the time he was injured. The express truck was being pulled by Patterson by a tongue or handle approximately five feet in length. There were no obstructions on the station platform along which the express truck was being operated which necessitated the truck being pulled close to the mail car in which plaintiff was standing. Nor was there anything to obstruct Patterson's view of the plaintiff, at least when he came along side the doorway in which plaintiff was standing, if not before he reached that position. True, the tendencies of defendants' evidence were in conflict, with that of the plaintiff, but we are here considering the refusal of the general charge to defendants.

If the tendencies of plaintiff's evidence were sufficient to carry to the jury the issue of defendants' negligence, then the affirmative charge for defendants was properly refused, unless of course the evidence shows that plaintiff's own negligence, if any, proximately contributed to his injury.

As we understand it, the defendants argue that they were entitled to the general charge, first because the evidence was insufficient to show negligence on the part of defendants and, second, that the evidence shows, without conflict, that plaintiff's own negligence proximately contributed to his injury. These two theories are argued separately and we will so treat them.

It is first insisted that the general charge should have been given for the defendants because of a lack of evidence raising a duty of care toward the plaintiff under the circumstances; that there was no evidence that defendant Patterson actually knew of the presence of plaintiff in the mail car or that he had any notice or knowledge of the presence of plaintiff's hand on the grab iron at the time plaintiff was injured.

It is clear enough that plaintiff was at a place where he had a right to be, and defendants owed him the duty not to injure him. Actual knowledge on the part of Patterson of the fact that plaintiff was in the mail car door and had his hand on the grab iron was not essential to fixing liability. In 45 Corpus Juris page 653, section 27, the rule is stated as follows:

"Implied, constructive or imputed knowledge or notice. The notice of defect or danger which is necessary in order to impose liability for negligence need not be actual, for negligently remaining ignorant of that which it is one's duty to know has the same effect as actual knowledge and in such case one is said to have implied or constructive notice. That is to say, where a person is under a duty to discover or to know of a defect or danger, and could discover it by the exercise of due care, the condition having existed for a sufficient time to have enabled him to discover it, actual knowledge thereof is imputed to him so far as the question of his negligence is concerned, or, what amounts to the same thing in practical effect, his failure to discover the defect or danger is regarded as negligence. What constitutes sufficient time to discover a defect or danger must depend on the circumstances of each case. The governing consideration is what the person sought to be charged should reasonably have foreseen, the rule being that one is bound to anticipate the reasonable and natural consequences of his own conduct. One is charged with knowledge or notice of what a reasonably prudent person would have foreseen, and is negligent if he fails to use the care necessary to avoid danger which should have been anticipated, but is not under any duty to anticipate what a reasonably prudent person would not have anticipated, or chargeable with negligence in failing to provide against danger which such a person would not have foreseen or injury which it could not reasonably have foreseen would naturally or probably follow. The rule just stated is usually enunciated in connection with the doctrine of proximate cause, but it is not limited to that phase of the law of negligence. There is a duty to provide against an injury to another or to his property which might reasonably be foreseen. It is not necessary, in order to impose this duty, that injury should be inevitable, that the danger thereof should be great, or

even that the chances of injury should exceed the chances of absence of injury; but it is sufficient that injury is likely or reasonably probable."

And in 38 Amer.Juris. 667, section 24, it is said:

"Probability of injury, imputed knowledge. The probability of injury by one to the legally protected interests of another is the basis for the law's creation of a duty to avoid such injury. Every person is under a duty to exercise his senses and intelligence in his actions in order to avoid injury to others, and where a situation suggests investigation and inspection in order that its dangers may fully appear, the duty to make such investigation and inspection is imposed by law. It is no excuse that one who has created a peril did not intend or expect an injury to result therefrom; every person is held to a knowledge of the natural and probable consequences of his acts. One under duty to use care for which knowledge is necessary cannot escape liability for negligence because of voluntary ignorance. If the circumstances are such that a person of ordinary common sense who thought about it would recognize at once that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, his acts would place another person in danger, the duty to use ordinary care and skill to avoid such danger arises. For example, a person is charged with knowledge that a falling object of some weight is a source of danger to persons who may be in its path and he is under duty to take care to prevent an injury to another from such source, when handling heavy objects.

"Liability for negligence may be predicated upon the lack of foresight or of forethought which is exhibited where one remains in voluntary ignorance of facts respecting danger inherent in the particular act or instrumentality involved, concerning which a reasonably prudent person would become advised, on the theory that such ignorance is the equivalent of negligence. Inattention to the duty to exercise care in a situation which reasonably may be regarded as hazardous is negligence, notwithstanding the act or omission involved would not in all cases, or even ordinarily, be productive of injurious consequences.

"Negligence, which is a relative term generally, is clearly relative in reference to the knowledge of the risk of injury to be apprehended. In any case, it is the tendency of the act involved to cause some injury to the person who is actually injured thereby, or to someone else who occupies a position which in reference to the act, is analogous to the situation of the injured person, under the circumstances known to the actor, that is to be discovered."

■ The principle has been often applied by the courts of this State.

In the case of Southern Railway Co. v. Arnold, 162 Ala. 570, 50 So. 293, 294, the Court said: "The facts stated are sufficiently definite and certain out of which to raise a duty on the part of the defendants not to place, or cause to be placed, the car which injured plaintiff so near the track over which plaintiff in the discharge of his duties had to pass as to injure him. It may be stated to be a sound rule of law that every man owes his fellow man the general duty not to negligently injure him. Certainly, if one negligently places a car so near a track over which cars are being rightfully operated by another as to injure such other person, or his servant, while in the discharge of his duty to his master in operating cars over said track, he should be held responsible for the injury proximately caused by his negligence."

And in the case of Whiddon v. Malone, 220 Ala. 220, 124 So. 516, 517, the court observed: "The duty not to injure another by wrongful or negligent act is common to all."

In the case of Mobile and Ohio R. R. v. Williams, 221 Ala. 402, 129 So. 60, 64, the Court said: "Reasonable care requires conduct commensurate with the danger to be reasonably apprehended."

And in the case of White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 So. 479, 480, the Court said: "The terms 'ordinary care' and 'reasonable prudence,' as applied to the conduct and the affairs of men, are

declared to have only a relative significance, depending upon the special circumstances and surroundings of the particular case, and to defy arbitrary definition. When a given state of facts is such that reasonable men may differ as to whether or not negligence intervened, as whether or not ordinary care and reasonable prudence characterized the actions and conduct of an actor, the determination of such question becomes a matter for the jury." See, also, Housing Authority of Birmingham v. Morris, 244 Ala. 557, 14 So.2d 527.

■ Moreover, the jury could have found from the evidence that Patterson had actual knowledge of plaintiff's presence in the mail car door. The rule in this regard is fully stated in the case of Louisville & Nashville R. R. v. Jenkins, 196 Ala. 136, 72 So. 68, and needs no repetition here. The evidence was sufficient to take the case to the jury on the issue of defendants' negligence. Assignments of error 1, 2, 3 and 4 are therefore without merit.

Assignment of error numbered 5 is predicated upon the refusal of the trial court to instruct the jury that plaintiff was guilty of contributory negligence as a matter of law, embodied in charge 21.

■ The plaintiff's evidence tended to show that when plaintiff saw the express truck it was approximately fifteen feet away and being pulled along a line approximately twenty inches away from the side of the mail car. His hand was on the grab iron, which protruded from the side of the mail car approximately two inches. According to plaintiff, there were no obstructions on the platform opposite or near the door in which he was standing which would require Patterson to bring the express truck closer to the mail car. If Patterson continued to pull the truck in the same manner in which he was pulling at the time plaintiff saw him, the truck would pass the door and grab iron with ample room to spare. There was nothing to put plaintiff on notice that Patterson would negligently turn the truck to the left and against the grab iron. Plaintiff, being in a place of safety, was not bound to antici-

pate that Patterson would be guilty of negligence and place him in peril. Plaintiff was under a duty to act for his own safety only after he became aware of peril to him. The rule is well stated by Mr. Justice Bouldin in the case of Birmingham Electric Co. v. Jones, 234 Ala. 590, 176 So. 203, 208, as follows:

"It is argued that plaintiff was negligent in taking a position and standing within the zone of the outswing of the car, in that he could readily have taken his position on the right-hand side of the track with reference to the approaching car, and been out of the zone of danger. This, on the well-recognized principle that if a safe and a dangerous way are equally open, it is the duty of the party to select the safe rather than the dangerous one.

"This principle has no application, if both places are safe, unless and until rendered unsafe by a breach of duty on the part of him who relies on such principle. Under plaintiff's version he was under no duty to anticipate this car would pass him by and put him in danger from the outswing.

"The real inquiry, if the jury believed the plaintiff, is whether he was lacking in ordinary care for his own safety after being put in a position of peril.

"Without dispute, he could have escaped by stepping back one or two steps before the rear portion of the car reached him. Whether he was negligent, wanting in ordinary care, turns much on when he became aware of his peril. Not until it becomes apparent that he is being put in a place of peril by the wrongful act of the other does the duty arise to adopt means of escape. Until then, he may rely on the performance of duty by the other.

"The rule recognized by this court in such cases is that the plaintiff must have become aware of his danger, conscious of his peril, and then was lacking in ordinary care. This is usually a question for the jury.—Birmingham Stove & Range Co. v. Vanderford, 217 Ala. 342, 116 So. 334; Alabama Co. v. Sanders, 202 Ala. 295, 297, 80 So. 360; Richmond & Danville Ry. Co.

v. Farmer, 97 Ala. 141, 12 So. 86; Louisville & Nashville R. R. Co. v. Thornton, 117 Ala. 274, 282, 23 So. 778; Cook v. Central R. R. & Banking Co., 67 Ala. 533; Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276; Morgan v. M. & O. R. Co., 202 Ala. 461, 80 So. 845; Louisville & Nashville R. R. Co. v. Naugher, 203 Ala. 557, 560, 84 So. 262; Jones v. Ripley Stave Co., 203 Ala. 60, 82 So. 20; Labatt's Master and Servant, § 332."

 The question of contributory negligence was for the jury.

Defendants' assignment of error numbered 6 is based on the refusal of defendants' charge numbered 26. Charge 26 was fully covered in defendants' given charge 27.

Assignments of error numbered 7 and 8 are predicated upon the refusal of the trial court to give to the jury written charges 16 and 30. These charges assume that knowledge or notice on the part of Patterson of the presence of plaintiff in the car door (charge 16) and that plaintiff had his hand on the grab iron (charge 30) was essential to defendants' liability. What we have already said demonstrates that these charges were erroneous.

Assignment of error numbered 9 is not argued in brief and is therefore waived.

Assignment of error numbered 10 is predicated upon the overruling of defendants' motion for a new trial.

Some of the grounds of the motion for a new trial have been, in effect, disposed of above. Only one other ground merits our special consideration, and that is that the verdict is excessive. We will not attempt to detail the evidence on that point. Suffice it to say that we have carefully considered it in conference and are to the conclusion that it is excessive. We think that the motion for a new trial should be granted on that ground, unless appellee remits the amount of his recovery from $4,500.00 to $3,000.00. A judgment will accordingly be entered that unless appellee files with the clerk of this Court a remittitur within thirty days, reducing the judgment to $3,000.00, the judgment of the trial court will stand reversed. If such

remittitur is duly filed, the judgment for $3,000.00 will stand affirmed.

Affirmed conditionally.

BROWN, SIMPSON and STAKELY, JJ., concur.